Tina Wolfson, SBN 174806
*twolfson@ahdootwolfson.com*
Bradley K. King, SBN 274399
*bking@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Kim E. Richman*
*krichman@richmanlawgroup.com*
RICHMAN LAW GROUP
81 Prospect Street
Brooklyn, New York 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
* *pro hac vice* application forthcoming

*Counsel for Plaintiff Stephanie Mattero*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE MATTERO, on behalf of herself and all others similarly situated,<br><br>              Plaintiff,<br><br>        v.<br><br>COSTCO WHOLESALE CORPORATION, a Washington corporation,<br><br>              Defendant. | Case No. 3:18-cv-2871<br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

Plaintiff Stephanie Mattero ("Plaintiff"), acting on behalf of herself and all others similarly situated, brings this action for damages and equitable relief against Defendant Costco Wholesale Corporation ("Costco"):

## NATURE OF THE CASE

1.      This is a proposed class action brought by Plaintiff, on behalf of a class of similarly situated individuals, against Costco seeking redress for Costco's unjust, unfair, and deceptive practices in misrepresenting the environmental benefits of the Products in violation of California and common law.

2.      In recent years, consumers have become significantly more aware of and sensitive to the toxicity and impact of household products on the environment.  Consumers seek, and will pay a premium for, products that are safe and responsibly made, including products that will not negatively affect the environment.

3.      As a result, demand has increased for "green" products that are naturally derived, environmentally sound, and non-toxic.

4.      Costco packages, markets, distributes, and offers for retail sale a line of "environmentally responsible" cleaners under its private-label "Kirkland Signature" line.  Costco sells these Products at its hundreds of "members only" stores throughout the United States.  The Products are also available, to a lesser extent, in retail stores outside of Costco, as well as through online retailers like Amazon.  The Products at issue are Kirkland Signature Premium Liquid Dish Soap ("Signature Dish Soap") and the Kirkland Signature Premium Laundry Detergent ("Signature Laundry Detergent") (collectively, the "Products").[1]

5.      Costco labels the Products as "environmentally responsible," alongside numerous additional representations and imagery touting the purported "green" properties of the Products.

6.      The Products' "environmentally responsible" labels are accompanied by claims that the Products are made from "naturally derived ingredients," are "Recognized for Safer Chemistry," are "safer for the planet," and made according to a "biodegradable formula."

---

[1] Discovery may reveal that additional products are similarly misrepresented, and Plaintiff reserves the right to add them to the definition of "Products."

7. Additionally, Costco fills the Products' labels with imagery—such as icons resembling recycling symbols, water drops, and leaves, and a central image of a leaf floating in pristine water—that is highly suggestive of "green," environmentally responsible products.

8. Thus, Costco's representation that the Products are "environmentally responsible"—especially when viewed in the context of the additional representations and suggestive label imagery—creates an impression that the Products are natural, safer, and environmentally sound alternatives to traditional dish soaps and detergents.

9. Unfortunately for consumers, this impression is not accurate. As detailed herein, the Products are not "environmentally responsible" as advertised on the Products' labels.

10. In fact, the Products contain unnatural, harmful, and toxic chemical ingredients, including sodium hydroxide, sodium lauryl sulfate ("SLS"), lauramine oxide, and methylisothiazolinone ("MI"). Reasonable consumers do not expect such ingredients to be in products labeled "environmentally responsible."[2]

11. Consumers lack the ability to test or independently ascertain the accuracy of a cleaning product label, especially at the point of sale. Reasonable consumers must and do rely on the company to honestly report the nature of a product's characteristics or ingredients.

12. Costco intends for consumers to rely upon their dish soap and laundry detergent product label representations, and reasonable consumers do in fact so rely.

13. As a result of its "environmentally responsible" misrepresentations, Costco was able to sell the Products to potentially hundreds of thousands of consumers throughout the United States and to realize sizeable profits.

14. Costco's misrepresentations and omissions violate state and federal law as detailed more fully below.

---

[2] The Products also contain methylchloroisothiazolinone ("MCI") and benzisothiazolinone ("BIT"). These preservatives, along with MI, are associated with contact allergic reactions and other sensitizations among a significant proportion of the population. The presence of these contact allergens belie Costco's label representation that the Products are "mild on skin" and "gentle on skin," further evidencing the misleading nature of the Products' labels.

15.     By deceiving consumers about the nature, quality, and/or ingredients of the Products as detailed herein, Costco was and is able to sell, or sell more of, or charge more for, the Products than it would be able to do if the Products were accurately labeled.  Costco was also motivated to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

16.     Plaintiff brings this action to stop Costco's misleading practices.

## PARTIES

17.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of San Francisco County, California.

18.     In December of 2015, Plaintiff purchased Kirkland Signature Environmentally Responsible Ultra Liquid Dish Soap (Costco Item Number 295861) from a Costco outlet located in San Francisco, California.

19.     Plaintiff viewed and relied upon Costco's "environmentally responsible" representations when purchasing the Products.

20.     Viewing the "environmentally responsible" representation in the context of the additional representations and imagery on the label, Plaintiff understood "environmentally responsible" to mean that the Products offered a natural, safer, and environmentally sound alternative to traditional soaps.

21.     If Costco's misleading conduct were remedied, *i.e.,* if the Products were altered to conform to the representations on the labels, Plaintiff would consider purchasing the Products again.

22.     Defendant is a Washington corporation with its principal place of business located at 999 Lake Drive, Issaquah, Washington 98027.

23.     Costco markets and distributes the challenged Products throughout California, Washington, and the United States.  The challenged Products are manufactured by The Sun Product Corporation ("Sun"), a Delaware corporation with its principal place of business in Wilton, Connecticut. Sun manufacturers, *inter alia*, "green" cleaners and detergents, which it manufacturers under Costco's directions and to Costco's specifications for ultimate sale under Costco's "Kirkland Signature" private label line of products.

CLASS ACTION COMPLAINT, CASE NO. 3:18-cv-2871

**JURISDICTION AND VENUE**

24.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and Members of the Proposed Class are citizens of states different from Costco.

25.     This Court has personal jurisdiction over the parties in this case. Plaintiff is a citizen of San Francisco, California. This Court may exercise jurisdiction over Defendant Costco because Costco purposefully avails itself of the California consumer market, and distributes the Products to locations in and throughout California, where the Products are purchased by thousands of consumers daily. Costco is registered to do business in California and operates retail locations within this District.  Thus, Costco has established sufficient contacts in this District such that personal jurisdiction is appropriate.

26.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  Specifically, Plaintiff purchased the Products from a Costco retail location within this District.

**INTRADISTRICT ASSIGNMENT**

27.     Assignment to this division is appropriate under Civil L.R. 3-2(c) and (d) because a substantial part of the events or omissions that give rise to the claim – including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products – occurred within San Francisco County.

**FACTUAL ALLEGATIONS**

28.     Seeking to profit from consumers' desire to purchase and use natural, environmentally sound, and safer alternatives to standard dish soap and detergent offerings, Costco manufactures and/or directs the manufacturing of "environmentally responsible" dish soap and detergent formulations, including the Products.

29.     Costco uniformly markets the Products as "environmentally responsible" alternatives that provide environmental benefits that traditional dish soaps and detergents do not.

30.     Costco labels and markets these formulations under its "Kirkland Signature" private label, and the Products are sold in the hundreds of Costco's retail stores throughout the country, through selected third-party retailers, and over the Internet.

31.     The packaging for the Products misrepresents that the Products are "environmentally responsible" and suggest that they will benefit the environment in a variety of ways.

32.     The term "environmentally responsible" uniformly conveys to reasonable consumers that a product has certain benefits over conventional products—in particular, that a product is non-toxic to plant and animal life, including humans.  Reasonable consumers recognize that not all natural or "naturally derived" substances are non-toxic, but they trust that when companies designate products as "environmentally responsible," the companies are doing so to convey that the products contain only non-toxic, natural substances.

33.     Thus, the Products are deceptively marketed as being uniquely positioned, in contrast to Costco's and other companies' conventional cleaning product offerings, to provide consumers with natural, environmentally sound, and safe alternatives.

## I.     The "Environmentally Responsible" Representations

34.      Costco represents the Products to be "environmentally responsible," positioning this claim in the context of the additional representations and imagery suggesting that the product is naturally derived, made with bio-products, safer, gentle, and provide environmental and safety benefits that traditional dish soaps and detergents do not.

35.     At some point during the relevant time period for this class action, Costco began to use suggestive green colored packaging and market the Products, both Signature Dish Soap and Signature Laundry Detergent, as "environmentally responsible."  Among the largest words on the front of the label are "environmentally responsible," implying that a consumer who chooses to purchase the Products is acting in a manner beneficial to the environment.  Examples of the "environmentally responsible" product packaging and labels are reproduced below:

CLASS ACTION COMPLAINT, CASE NO. 3:18-cv-2871










36.     Costco couples its "environmentally responsible" claims with third-party seals and icon-style designs to further portray the Products as alternatives that provide environmental and other benefits that traditional dish soaps and detergents do not.

37.     For example, the front labels of the "environmentally responsible" Products currently include an icon indicating participation in the EPA's "Safer Choice" market-based incentive program.

38.     The EPA's Safer Choice program relies on hazard analysis, rather than risk analysis, to assess product safety. While popular with many stakeholders and expedient from a resource-management perspective, hazard-based ingredient standards say little about the broader sustainability— or "environmental responsibility"—of the end-use product.[3]

39.     The front labels of the challenged Products also include several icon-style designs promoting the "environmentally responsible" Products' alleged environmental and health benefits.  A blue circle with a white raindrop and "recycling"-type circular arrow touts the Products' "biodegradable formula."  A green circle with three white leaves states that the Products "include[] naturally derived cleaning ingredients," with "naturally derived" written larger, and bolder, than the other words.

---

[3] *See, e.g.*, Charles L. Franklin, "Chasing Hazards: Toxicity, Sustainability, and the Hazard Paradox," *Natural Resource & Environment* (ABA), Vol. 29, at 4 (Spring 2015).

40.     All the environmental and safety representations made on the "environmentally responsible" Products' front labels are set against a placid backdrop of a green leaf floating on a pool of water and are designed to lure consumers who are concerned about the use of chemicals and harmful substances.

41.     The back labels of the "environmentally responsible" Products' packaging repeat many of the same representations from the front label and add such explicit representations as "safer for the planet."

42.     These additional claims and imagery are used by Costco to strengthen the impression among consumers that the Products are "environmentally responsible," purporting to provide environmental benefits that traditional dish soaps and detergents do not.

43.     Contrary to this impression, the Products contain harmful ingredients that are not environmentally responsible or safer than traditional dish soap or detergent offerings.

44.     For instance, the Federal Water Pollution Control Act designates sodium hydroxide as a hazardous substance.[4]

45.     The International Programme on Chemical Safety states that sodium lauryl sulfate ("SLS") is "toxic to aquatic organisms.  It is strongly advised not to let the chemical enter into the environment."[5]

46.     The U.S. National Library of Medicine's Toxicology Data Network lists lauramine oxide as "Artificial Pollution Source."[6]

47.     The EPA specifically lists methylisothiazolinone ("MI"), methylchloroisothiazolinone ("MCI"), and benzisothiazolinone ("BIT") as "yellow triangle" chemical ingredients—meaning that they are chemicals with "hazard profile issues" and are "*not* associated with a low level of hazard

---

[4] *See* 40 C.F.R. § 116.4.
[5] The International Labour Organization, International Chemical Safety Card for Sodium Lauryl Sulfate, *available at* http://www.ilo.org/dyn/icsc/showcard.display?p_lang=en&p_card_id=0502&p_version=1 (last visited Apr. 3, 2018).
[6] National Institutes of Health, U.S. National Library of Medicine. Hazardous Substances Data Bank, Toxicology Data Network: Lauramine Oxide, *available at* http://bit.ly/2aTjjrK (last visited Apr. 3, 2018).

concern for all human health and environmental endpoints" (emphasis added).[7]  The EPA also lists MI as a pesticide and describes it as "moderately to highly toxic to freshwater and estuarine/marine organisms."[8]

48.     Despite all of this, Costco makes the "environmentally responsible" claims on the Products' packaging, enabling Costco to sell more of its cleaning Products than it would without the label, and to crowd competing products from the market.

## II.     Harmful, Unnatural Chemicals in the Products

49.     Contrary to Costco's "environmentally responsible" representations, the Products contain harmful ingredients that are not environmentally responsible or safer than ingredients found in traditional dish soap or detergent offerings.   The Products' harmful ingredients include sodium hydroxide, SLS, lauramine oxide, and MI.

### A.     Sodium Hydroxide

50.     Sodium hydroxide is a highly caustic and very corrosive, manufactured substance used to neutralize acids and make sodium salts.  Other common names include caustic soda and lye.

51.     At room temperature, sodium hydroxide is a white, crystalline, odorless solid that absorbs moisture from the air.  When dissolved in water or neutralized with acid it releases substantial heat, which may be sufficient to ignite combustible materials.

52.     Sodium hydroxide is used to manufacture soaps, rayon, paper, explosives, dyestuffs, and petroleum products.  It is also used in metal cleaning and processing, oxide coating, electroplating, and electrolytic extracting.  It is commonly present in commercial drain and oven cleaners.

53.     Sodium hydroxide is designated as a hazardous substance under section 311(b)(2)(A) of the Federal Water Pollution Control Act and further regulated by the Clean Water Act Amendments of 1977 and 1978.[9]

---

[7] U.S. Environmental Protection Agency, "Safer Chemicals Ingredients List," *available at* http://www2.epa.gov/saferchoice/safer-ingredients (last visited Apr. 3, 2018).

[8] U.S. Environmental Protection Agency, Reregistration Eligibility Decision (RED)—Methylisothiazolinone.    EPA738-R-98-012    (1998),    *available    at* http://archive.epa.gov/pesticides/reregistration/web/pdf/3092.pdf.

[9] 40 C.F.R. § 116.4.

54.     A reasonable consumer would not expect a product labeled as "environmentally responsible" to contain a chemical designated as a hazardous water pollutant.

**B.     Sodium Lauryl Sulfate**

55.     Sodium lauryl sulfate is a white- or cream-colored crystal, flake, or powder with a faint odor used in general as a detergent, dispersant, and surfactant.

56.     SLS is toxic to aquatic organisms.  The International Programme on Chemical Safety advises that SLS should be kept out of the environment, stating: "Do NOT let this chemical enter the environment."[10]

57.     A reasonable consumer would not expect a product labeled as "environmentally responsible" to contain a chemical that international authorities have advised should not even be permitted to enter the environment.

**C.     Lauramine Oxide**

58.     Lauramine oxide is an aliphatic tertiary amine oxide that is used mostly in hair care products as a foam builder and stabilizer, viscosity enhancer, emollient, conditioner, emulsifier, antistatic agent, and wetting agent.

59.     The National Oceanic and Atmospheric Administration's CAMEO Chemicals, a database of hazardous chemical datasheets, lists lauramine oxide (by its chemical name Dimethyldodecylamine-N-Oxide) as highly toxic and states runoff from dilution water may be corrosive and/or toxic and cause pollution.[11]

60.     The U.S. National Library of Medicine's Toxicology Data Network lists lauramine oxide as an "Artificial Pollution Source" and warns, "Ultimate disposal of the chemical must consider: the

---

[10] The International Labour Org.,  International Chemical Safety Card for Sodium Lauryl Sulfate, *available at* http://www.ilo.org/dyn/icsc/showcard.display?p_lang=en&p_card_id=0502&p_version=1 (last visited Apr. 3. 2018).

[11] National Oceanic & Atmospheric Admin., Chemical Data Sheet, CAMEO Chemicals, available at: http://cameochemicals.noaa.gov/chemical/20239 (last visited Apr. 3, 2018).

material's impact on air quality; potential migration in soil or water; effects on animal, aquatic, and plant life."[12]

61.     A reasonable consumer would not expect a product labeled as "environmentally responsible" to contain a chemical designated as a highly toxic pollutant.

**D.     Methylisothiazolinone**

62.     Methylisothiazolinone (2-methyl-4-isothiazolin-3-one, or "MI") is a powerful biocide used for controlling microbial growth in water-containing solutions.

63.     MI is produced, generally, by the controlled chlorination of dimethyldithiodipropionamide ("DPAM") in solvent, followed by neutralization and extraction into water.

64.     MI is an inexpensive and widely available synthetic biocidal preservative used for curbing microbial growth in water-containing solutions.

65.     As far back as the mid-1980s, MI was recognized as a contact allergen.[13]

66.     Approximately 10 years ago, MI's use in the United States moved from almost exclusively industrial applications to household and cosmetic applications. Since then, MI's use has increased steadily in household and cosmetic applications.

67.     The EPA lists MI as a pesticide and describes it as "moderately to highly toxic to freshwater and estuarine/marine organisms."[14]

68.     A reasonable consumer would not expect a product labeled as "environmentally responsible" to contain a chemical designated as highly toxic to aquatic life.

69.     In fact, none of these chemicals are the type of ingredients that reasonable consumers would expect to find in products advertised as "environmentally responsible."

---

[12] National Institutes of Health, U.S. National Library of Medicine. Hazardous Substances Data Bank, Toxicology Data Network: Lauramine Oxide, *available at* http://bit.ly/2aTjjrK (last visited Apr. 3, 2018).
[13] *See, e.g.*, DeGroot, A.C., and Weyland, J.W., "Kathon CG: A Review," 18 *Journal of the American Academy of Dermatology* 350 (1988).
[14] U.S. Environmental Protection Agency, Reregistration Eligibility Decision (RED)— Methylisothiazolinone. EPA738-R-98-012 (1998), *available at* http://archive.epa.gov/pesticides/reregistration/web/pdf/3092.pdf.

---

70.     By including such unnatural and toxic components, Costco provides the opposite of the advertised "environmentally responsible" Products.

71.     Moreover, Costco makes no disclaimer regarding the presence of these ingredients on the front label of the packaging, where Costco makes the prominent "environmentally responsible" claims.

72.     The production and use of these ingredients in the Products may result in its release to the environment through various waste streams.

73.     Because the Products contain unnatural, hazardous, and toxic ingredients, Costco's claims that the Products are "environmentally responsible" are false, misleading, and designed to deceive consumers into purchasing the Products.

**III.     The Nature of the Illegality of Costco's Conduct**

74.     Costco has profited enormously from its false advertising of the Products.  Costco is one of the largest retailers in the world and is perceived by consumers to have a commitment to higher standards in product formulation.  Indeed, Costco positions its own private label products—the "Kirkland Signature" line—as follows: "The working rule followed by Costco buyers is that all Kirkland Signature products must be equal to or better than the national brands, and must offer a savings to our members."[15]

75.     The Federal Trade Commission (FTC), whose mission is, in part, "[t]o prevent business practices that are anticompetitive or deceptive or unfair to consumers," has issued marketing standards, known as the "FTC Green Guides,"[16] that apply to the unfair and deceptive nature of Costco's environmental marketing claims.

---

[15] Costco, "Kirkland Signature Means Quality and Value," *available at* http://www.costco.com/kirkland-signature.html (last visited Apr. 3, 2018) ("The Kirkland Signature label today appears on about 20 percent of the products you find in your local [Costco] warehouse—on everything from men's dress shirts to laundry detergent, pet food to toilet paper, canned foods to cookware, olive oil to beer, automotive products to health and beauty aids.").

[16] Federal Trade Commission, *GUIDES FOR THE USE OF ENVIRONMENTAL MARKETING CLAIMS*, 16 C.F.R. Part 260, *available at* http://bit.ly/1osdMfk.

76.     Environmental marketing claims that violate the standards of the Green Guides are *per se* unlawful under California's Environmental Marketing Claims Act ("EMCA"), Cal. Bus. & Prof. Code §§ 17580-17581.

77.     The acts and omissions alleged herein are in contravention of the FTC Green Guides and in violation of the EMCA in several respects.  For example, Costco makes unqualified representations about the "environmentally responsible" qualities of the Products, whereas the FTC Green Guides advise that, to prevent deceptive claims, any "qualifications and disclosures should be clear, prominent and understandable."[17]

78.     Furthermore, the FTC Green Guides advise: "To make disclosures clear and prominent, marketers . . . should place disclosures in close proximity to the qualified claim."[18]  Costco has not placed any clear, prominent disclosures in close proximity to its unqualified "environmentally responsible" claims.

79.     Similarly, Costco makes unqualified representations that the Products offer general environmental benefits, whereas the Green Guides advise "marketers should not make unqualified general environmental benefit claims."[19]  By way of illustration and not limitation, Costco's representations that the Products are "naturally derived" and use "safer chemistry," and Costco's use of illustrations of a green leaf floating gently on a pristine pool of water, are all such unqualified representations of general environmental benefit.[20]

---

[17] 16 C.F.R. § 260.3(a) (2012); *see also* 16 C.F.R. § 260.6(a) (2003) ("*Qualifications and disclosures*. The Commission traditionally has held that in order to be effective, any qualifications or disclosures such as those described in these guides should be sufficiently clear, prominent and understandable to prevent deception.").

[18] 16 C.F.R. § 260.3(a) (2012); *see also* 16 C.F.R. § 260.6(a) (2003) ("Clarity of language, relative type size and proximity to the claim being qualified, and an absence of contrary claims that could undercut effectiveness, will maximize the likelihood that the qualifications and disclosures are appropriately clear and prominent.").

[19] 16 C.F.R. § 260.4(b) (2012); *see also* 16 C.F.R. § 260.7(a) (2003) ("It is deceptive to misrepresent, directly or by implication, that a product, package or service offers a general environmental benefit. . . . [E]very express and material implied claim that the general assertion conveys to reasonable consumers about an objective quality, feature or attribute of a product or service must be substantiated. Unless this substantiation duty can be met, broad environmental claims should either be avoided or qualified, as necessary, to prevent deception about the specific nature of the environmental benefit being asserted.").

[20] *See, e.g.*, 16 C.F.R. § 260.4 ("Example 3") (2012) ("A marketer's advertisement features a picture of a laser printer in a bird's nest balancing on a tree branch, surrounded by a dense forest. In green type,

---

13

80.     Although the FTC Green Guides do not specifically address terms such as "naturally derived" or "plant-based formula," the FTC has made clear that the general principles of the Guides apply—*i.e.*, use of such terms must not be misleading to reasonable consumers, and marketers must have substantiation for such claims if they evoke environmental benefits.[21]   Costco's use of these terms is misleading and unsubstantiated, as described herein.

81.     The FTC Green Guides make clear that where a product features a third-party seal or other certification pertaining to an attribute of the product, that claim must be qualified to ensure that consumer deception does not occur.[22]   Here, the Products feature an EPA "Recognized for Safer Chemistry" seal, which implies to consumers that the certifying agency unqualifiedly supports the safety profile of the Products.   Costco's failure to include qualifying language for this seal is misleading, as described herein.

82.     These additional unqualified claims and imagery provide the context in which consumers view Costco's misleading "environmentally responsible" representations, increasing the extent to which consumers are deceptively misled into believing that the Products offer naturally derived, environmentally sound, and relatively safer product alternatives to traditional dish soap and detergent offerings.

83.     Costco has profited enormously from false and misleading representations that the Products are natural, safe, and environmentally sound.   The purpose of this action is to put an end to Costco's deceptive marketing of the Products.

---

the marketer states, 'Buy our printer. Make a change.' Although the advertisement does not expressly claim that the product has environmental benefits, the featured images, in combination with the text, likely convey that the product has far-reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that the marketer can substantiate these claims, this advertisement is deceptive.").

[21] *See* Federal Trade Commission, *THE GREEN GUIDES: STATEMENT OF BASIS AND PURPOSE* at 259, *available at* http://bit.ly/2bg7w63 (citing 75 Fed. Reg. 63,552, 63,585-63,586 (Oct. 15, 2010)). The FTC did not propose specific guidelines regarding the term "natural" because it "lacked consumer perception evidence indicating how consumers understand 'natural'." *Id.*

[22] *See* 16 C.F.R. § 260.6(d) (2012) ("A marketer's use of an environmental certification or seal of approval likely conveys that the product offers a general environmental benefit . . . if the certification or seal does not convey the basis for the certification or seal, either through the name or some other means. . . . [M]arketers should not use environmental certifications or seals that do not convey the basis for the certification.").

14

# CLASS ACTION ALLEGATIONS

84.     Plaintiff brings this lawsuit individually and as a class action on behalf all others similarly situated pursuant to Federal Rules of Civil Procedure ("Rule") 23(a), (b)(2), and/or (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

85.     The Class and alternative Sub-Class are defined as:

Nationwide Class:
All consumers who purchased the Products in the United States within any applicable limitations period before the filing of this complaint until the date of class certification ("the Nationwide Class").

California Sub-Class:
All consumers who purchased the Products in California within any applicable limitations period before the filing of this complaint until the date of class certification ("the California Sub-Class").

86.     Excluded from the Class and Sub-Classes are: (1) Costco, any entity or division in which Costco has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

87.     Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Costco's possession, custody, or control.

88.     Typicality: The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, purchased one or more of the Products.  Plaintiff, like all Class Members, has been damaged by Costco's misconduct in that, *inter alia*, she has been subjected to Costco's deceptive advertising of the Products.  Furthermore, the factual bases of Costco's misconduct are common to all

1   Class Members and represent a common thread of false advertising resulting in injury to all Class

2   Members.

3       89.   <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and

4   Class Members that predominate over any individual questions.  These common legal and factual issues

5   include the following:

6           a.      whether Costco misrepresented the Products;

7           b.      whether Costco's conduct was unfair and/or deceptive;

8           c.      whether Costco's conduct constitutes a breach of express warranty and/or implied

9   warranty;

10          d.      whether Costco, through deceptive, fraudulent, and misleading labeling,

11  advertising, marketing, and sales of the Products, was enriched at the expense of Plaintiff and Class

12  members through the payment of the purchase price for the Products;

13          e.      whether Plaintiff and the Class have sustained injury with respect to the common

14  law claims asserted, and if so, the proper measure of their injury;

15          f.      whether Costco has violated Washington's Consumer Protection Act, RCW §§

16  19.86.010, *et seq.*;

17          g.      whether Costco has violated California's Consumers Legal Remedies Act, Cal.

18  Civ. Code §§ 1750-1784;

19          h.      whether Costco has violated California's Environmental Marketing Claims Act,

20  Cal. Bus. & Prof. Code §§ 17580-17581;

21          i.      whether Costco has violated California's Unfair Competition Law, Cal. Bus. &

22  Prof. Code §§ 17200-17210;

23          j.      whether Costco has violated California's False Advertising Law, Cal. Bus. &

24  Prof. Code §§ 17500-17536;

25          k.      whether Costco has violated California's green advertising law, Cal. Bus. & Prof.

26  Code §§ 17580-17581; and

27          l.      whether the Class is entitled to an award of restitution pursuant to California

28  Business and Professions Code § 17203.

---

16

90.    <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of Class Members.   Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

91.    <u>Predominance and Superiority</u>: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Costco's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Costco's misconduct.   Absent a class action, Class Members will continue to incur damages, and Costco's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.**
**(On behalf of the California Sub-Class)**

92.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

93.    Plaintiff brings this cause of action individually and on behalf of the California Sub-Class against Costco.

94.    Costco is a "person" as defined by Cal. Civ. Code § 1761(c).

95.    Plaintiff and California Sub-Class Members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

96.    The Products constitute "products" as defined by Cal. Civ. Code § 1761(b).

97.    Plaintiff's and California Sub-Class Members' purchases of the Products constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

98.     Plaintiff's and California Sub-Class Members' purchases of the Products were for personal, family, and household purposes as meant by Cal. Civ. Code § 1761(d).

99.     Venue is proper under Cal. Civ. Code § 1780(d) because a substantial portion of the transactions at issue occurred in this District.  (*See* Declaration of Tina Wolfson, attached hereto as Exhibit 1.)

100.     Costco deceived consumers in its marketing, advertising, and labeling of the Products. Further, Costco knew or should have known that its marketing, advertising, and labeling of the Products would mislead a reasonable consumer.

101.     Costco's misrepresentations and nondisclosures violated the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. ("CLRA") in the following manner:

a.     In violation of Section 1770(a)(5), Costco misrepresented that the Products had characteristics, benefits, or uses that they did not have (that the Products were "environmentally responsible" when in fact they were not);

b.     In violation of Section 1770(a)(7), Costco misrepresented that the Products were of a particular standard, quality, and/or grade when they were of another (that the Products were "environmentally responsible" when in fact they were not); and

c.     In violation of Section 1770(a)(9), Costco advertised the Products with an intent not to sell them as advertised (advertising the Products as "environmentally responsible" when they were not);

d.     In violation of Section 1770(a)(14), Costco misrepresented that the Products conferred or involved rights, remedies, or obligations that they did not have (that the Products were "environmentally responsible" when in fact they were not); and

e.     In violation of Section 1770(a)(16), Costco misrepresented that the Products were supplied in accordance with previous representations when they were not (that the Products were "environmentally responsible" when in fact they were not).

102.     Costco's misrepresentations and nondisclosures regarding the Products were never disclosed at the time of purchase, or at any time thereafter, and were material to Plaintiff and California Sub-Class Members because a reasonable person would have considered these practices important in

deciding whether or not to purchase the Products and because Costco had a duty to disclose the truth about the Products.

103.    Plaintiff and California Sub-Class Members relied upon Costco's material misrepresentations and nondisclosures and, had Plaintiff and California Sub-Class Members known the truth about the Products, they would not have purchased the Products or would not have paid as much for them.

104.    As a direct and proximate result of Costco's material misrepresentations and nondisclosures, Plaintiff and California Sub-Class Members have been irreparably harmed.

105.    On behalf of the California Sub-Class, Plaintiff seeks injunctive relief in the form of an order enjoining Costco from making such material misrepresentations and failing to disclose or actively concealing its aforementioned practices.  Plaintiff also seeks attorneys' fees and costs.

106.    In accordance with Cal. Civ. Code § 1782(a), on April 5, 2018, Plaintiff's counsel served Costco with notice of the CLRA violations by certified mail, return receipt requested.

107.    Costco has failed to provide appropriate relief for its CLRA violations within 30 days of receipt of Plaintiff's notification letter, therefore Plaintiff seeks compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b).

**SECOND CAUSE OF ACTION**
**Violations of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.***
**(On behalf of the California Sub-Class)**

108.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

109.    Plaintiff brings this cause of action individually and on behalf of the California Sub-Class against Costco.

110.    As alleged more fully above, Costco has falsely advertised the Products by falsely claiming that the Products are unqualifiedly environmentally sound and are safe.

111.    Plaintiff and California Sub-Class Members have suffered injury in fact and have lost money or property as a result of Costco's violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL").

112.    Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiff and California Sub-Class Members seek an order of this Court that includes, but is not limited to, an order requiring Costco to remove and/or refrain from making representations on the Products' packaging representing that the Products provide an unqualified level of "environmentally responsible" qualities.

### THIRD CAUSE OF ACTION
**Violations of the California Environmental Marketing Claims Act,**
**Cal. Bus. & Prof. Code § 17580, *et seq.***
**(On behalf of the California Sub-Class)**

113.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

114.    Plaintiff brings this cause of action individually and on behalf of the California Sub-Class against Costco.

115.    As alleged more fully above, Costco has falsely advertised the Products by falsely claiming that the Products unqualifiedly provide environmental benefits, are safe, and are made with natural ingredients.

116.    Plaintiff and California Sub-Class Members have suffered injury in fact and have lost money or property as a result of Costco's violations of California's Environmental Marketing Claims Act, Cal. Bus. & Prof. Code § 17580, *et seq.* ("EMCA").

117.    In particular, Costco has violated and continues to violate California Business and Professions Code § 17580.5, which makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied" and which defines an environmental marketing claim to include "any claim contained in the [the FTC's Green Guides]." Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiff and California Sub-Class Members seek an order of this Court that includes, but is not limited to, an order requiring Costco to remove and/or refrain from making representations on the Products' packaging representing that the Products provide an unqualified level of "environmentally responsible" qualities.

**FOURTH CAUSE OF ACTION**
**Violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On behalf of the California Sub-Class)**

118.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

119.    Plaintiff brings this cause of action individually and on behalf of the California Sub-Class against Costco.

120.    California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

121.    Costco knew or should have known that it was deceptively advertising the Products.

122.    In failing to disclose its deceptive practices, Costco knowingly, intentionally, and/or negligently concealed material facts and breached its duty not to do so.

123.    Costco was under a duty to Plaintiff and California Sub-Class Members to disclose its deceptive advertising practices because Costco was in a superior position to know the true state of facts about its representations on the Products' labeling, and Costco failed to disclose the deceptive nature of the Products' labeling to Plaintiff and California Sub-Class Members.

124.    The facts concealed by Costco to Plaintiff and California Sub-Class Members are material in that reasonable persons would have considered them to be important in deciding whether to purchase the Products.  Had Plaintiff and California Sub-Class Members known the true nature of the Products, they would not have purchased the Products or would have paid less for them.

125.    Costco has violated and continues to violate the UCL's prohibition against engaging in "unlawful" business acts or practices, by, among other things, violating the CLRA, EMCA, and FAL.

126.    Costco's acts, omissions, and conduct also violate the unfair prong of the UCL because Costco's acts, omissions, and conduct, as alleged herein, offended public policy and constitutes immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiff and California Sub-Class Members.  The gravity of Costco's conduct outweighs any potential

benefits attributable to such conduct and there were reasonably available alternatives to further Costco's legitimate business interests, other than Costco's conduct described herein.

127. By failing to disclose its deceptive advertising practices, Costco engaged in a fraudulent business practice that is likely to deceive a reasonable consumer.

128. As a direct and proximate result of Costco's unfair and deceptive practices, Plaintiff and California Sub-Class Members have suffered and will continue to suffer actual damages.

129. Costco has been unjustly enriched and should be required to make restitution to Plaintiff and the California Sub-Class pursuant to §§ 17203 and 17204 of the UCL.

**FIFTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(On behalf of the Nationwide Class)**

130. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

131. Plaintiff brings this cause of action individually and on behalf of the National Class against Costco.

132. Costco's representations that the Products are "environmentally responsible" constitutes an affirmation of fact made with regard to the Products.

133. Costco's representations that the Products are "environmentally responsible," Costco's website promoting the Products, and Costco's advertising and promotions for the Products are part of the basis of the bargain between Costco, on the one hand, and Plaintiff and Class Members, the purchasers of the Products, on the other hand.

134. As set forth above, Costco's statements concerning the Products are false.

135. All conditions precedent to Costco's liability under the above-referenced contract have been performed by Plaintiff and the other Class members.

136. Costco breached its express warranties about the Products because, as alleged above, the Products are not "environmentally responsible." Costco therefore breached the applicable state statutes.

137. As a result of Costco's breaches of express warranty, Plaintiff and Class Members were damaged in amounts to be proven at trial.

CLASS ACTION COMPLAINT, CASE NO. 3:18-cv-2871

138.   Within a reasonable time after she knew or should have known of such breaches, Plaintiff, on behalf of herself and Class Members, placed Costco on notice thereof.  Specifically, on April 5, 2018, notice and demand letter were sent to Costco via certified mail that provided notice of Costco's breaches of express warranty.

139.   Wherefore Plaintiff, on behalf of the Class, prays for relief as set forth herein.

**SIXTH CAUSE OF ACTION**
**Violation of the Washington Consumer Protection Act**
**RCW §§ 19.86.010, *et seq.***
**(On behalf of the Nationwide Class)**

140.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

141.   Washington's Consumer Protection Act, RCW §§ 19.86.010, *et seq.* ("WCPA"), protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.  To achieve that goal, the WCPA prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ."  RCW § 19.86.020. An unfair or deceptive business practice is one that is likely to deceive a substantial portion of the public or otherwise affect public interest.

142.   Costco knew or should have known that it was deceptively advertising the Products.

143.   In failing to disclose its deceptive practices, Costco knowingly, intentionally, and/or negligently concealed material facts and breached its duty not to do so.

144.   Costco was under a duty to Plaintiff and Class Members to disclose its deceptive advertising practices because Costco was in a superior position to know the true state of facts about its representations on the Products' labeling, and Costco failed to disclose the deceptive nature of the Products' labeling to Plaintiff and Class Members.

145.   Costco's unfair acts or practices occurred in its trade or business and has injured a substantial portion of   the   public.   Costco's   general course   of conduct is injurious to   the public interest, and   such   acts   are   ongoing and/or   have   a substantial likelihood of   being repeated inasmuch as the Costco continues to deceptively label the Products.  As a direct and proximate result of Costco's unfair acts, Plaintiffs and National Class members have suffered actual injuries.

146.    Costco is headquartered in Washington; its strategies, decision-making, and commercial transactions originate in Washington; most of its key operations and employees reside, work, and make company decisions (including advertising and labeling decisions) in Washington; and Costco and many of its employees are part of the people of the State of Washington.  The conduct that Plaintiff challenges directly affects the people of the State of Washington, as well as consumers nationwide.

147.    As a result of Costco's conduct, Plaintiffs and Class members have suffered and will continue to suffer actual damages.

148.    Accordingly, Plaintiff, individually and on behalf of the National Class, seeks to recover actual damages and treble damages (where applicable), together with the costs of bringing this suit, including reasonable attorneys' fees.

149.    With respect to injunctive relief, Plaintiff, individually and on behalf of the National Class, seeks an Order enjoining Costco from further violations of the WCPA and to cease making such material misrepresentations and failing to disclose or actively concealing its aforementioned practices.

## RELIEF REQUESTED

Plaintiff, on behalf of herself and all others similarly situated, requests the Court enter judgment against Costco, and accordingly requests the following:

A.    An order certifying the proposed Class and designating Plaintiff as named representatives of the Class and designating the undersigned as Class Counsel;

B.    A declaration that Costco is financially responsible for notifying all Class Members about their deceptive advertising practices;

C.    An order enjoining Costco from further deceptive advertising practices regarding the Products;

D.    An award to Plaintiff and Class Members of compensatory, actual, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

E.    A declaration that Costco must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits it received from its sale of the Products, or make full restitution to Plaintiff and Class Members;

F.    An award of attorneys' fees and costs pursuant to all applicable laws;

G.    An award of pre-judgment and post-judgment interest, as provided by law;

H.    Leave to amend the Complaint to conform to the evidence produced at trial; and

I.    Such other relief as may be appropriate under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a trial by jury as to all matters so triable.

Dated: May 16, 2018

*/s/ Tina Wolfson*
Tina Wolfson, SBN 174806
*twolfson@ahdootwolfson.com*
Bradley K. King, SBN 274399
*bking@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Kim E. Richman*
*krichman@richmanlawgroup.com*
RICHMAN LAW GROUP
81 Prospect Street
Brooklyn, New York 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
* *pro hac vice* application forthcoming

*Counsel for Plaintiff Stephanie Mattero*