Tina Wolfson, SBN 174806
*twolfson@ahdootwolfson.com*
Bradley K. King, SBN 274399
*bking@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Michael Mietlicki*
*mmietlicki@richmanlawgroup.com*
RICHMAN LAW GROUP
81 Prospect Street
Brooklyn, New York 11201
Telephone: (718) 705-4579
Facsimile: (212) 687-8292
* *pro hac vice* application forthcoming

*Counsel for Plaintiff Stephanie Mattero*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

STEPHANIE MATTERO, on behalf of herself and all others similarly situated,

Plaintiff,

v.

COSTCO WHOLESALE CORPORATION, a Washington corporation,

Defendant.

Case No. 3:18-cv-02871-WHO

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR STAY LITIGATION**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. LEGAL STANDARDS ..... 3
III. ARGUMENT ..... 4
A. Plaintiff has standing to sue for both Products ..... 4
B. Plaintiff's allegations satisfy Rule 9(b) ..... 6
C. Plaintiff's claims are sufficiently pleaded ..... 8
1. Plaintiff sufficiently pleads Costco's violations of the CLRA, FAL, EMCA, UCL, and WCPA ..... 8
2. Plaintiff sufficiently pleads Costco's breach of express warranty ..... 12
D. Costco's alternative motion for stay should be denied ..... 14
IV. CONCLUSION ..... 16

**TABLE OF AUTHORITIES**

**CASES** **Page**

*Alltrade, Inc. v. Uniweld Prods.*, 946 F.2d 622 (9th Cir. 1991) ........ 3, 4, 14

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-cv-2910-EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012) ........ 4, 5

*Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007) ........ 6

*BellAtlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 3

*Birkholm v. Wash. Mut. Bank, F.A.*, 447 F. Supp. 2d 1158 (W.D. Wash. 2006) ........ 8

*Chuang v. Dr. Pepper Snapple Group, Inc.*, No. 17-cv-1875-MWF-MRW, 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ........ 11

*Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564 (N.D. Cal. 2013) ........ 5

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ........ 3

*Frenzel v. AliphCom*, 76 F. Supp. 3d 999 (N.D. Cal. 2014) ........ 13

*Gonzalez v. Costco*, No. 16-cv-2590-NGG-JO (E.D.N.Y.) ........ 2, 15, 16

*Gregorio v. The Clorox Company*, No. 17-cv-3824-PJH, 2018 WL 732673 (N.D. Cal. Feb. 6, 2018) ........ 10, 11

*Hairston v. S. Beach Beverage Co., Inc.*, No. 12-cv-1429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ........ 12

*Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014) ........ 8, 9, 11

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070 (N.D Cal. 2011) ........ 6

*In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011) ........ 9

*In re NJOY, Inc. Consumer Class Action Litig.*, No. 14-cv-428-MMM-RZ, 2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) ........ 7

*Jou v. Kimberly-Clark Corp.*, No. 13-cv-3075-JSC, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ........ 8

*Kane v. Chobani, Inc.*, No. 12-cv-2425-LHK, 2013 WL 5389253 (N.D. Cal. Sept. 19, 2013) ........ 11

*Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257 (W.D. Wash. 2011) ........ 8

*Kellman v. Whole Foods Market, Inc.*, No. 17-cv-6584-LB, 2018 WL 2938612 (N.D. Cal. June 12, 2018) ........ 13

*Lanovaz v. Twinings N. Am., Inc.*, No. 12-cv-2646-RMW, 2013 WL 2285221 (N.D. Cal. May 23, 2013) .......... 4

*Le v. Pricewaterhousecoopers LLP*, No. 07-cv-5476-MMC, 2008 WL 618938 (N.D. Cal. Mar. 4, 2008) .......... 3, 15

*Maple v. Costco Wholesale Corp.*, 649 F. App'x 570 (9th Cir. 2016) .......... 12

*Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200 (S.D. Cal. 2007) .......... 6

*Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666 (E.D.N.Y. 2017) .......... 12

*Parker v. J.M. Smucker Co.*, No. 13-cv-690-SC, 2013 WL 4516156 (N.D. Cal. Aug. 23, 2013) .......... 4, 7

*Red v. Kraft Foods, Inc.*, No. 10-1028-GW (AGRx), 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) .......... 11, 12

*Rooney v. Cumberland Packing Corp.*, No. 12-cv-33-H-DHB, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) .......... 12

*Rugg v. Johnson & Johnson*, No. 17-cv-5010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018) .......... 5

*Schwartz v. Frito-Lay N. Am.*, No. 12-cv-2740-EDL, 2012 WL 8147135 (N.D. Cal. Sept. 12, 2012) .......... 4

*Smith v. LG Elecs. U.S.A., Inc.*, No. 13-cv-4361-PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) .......... 14

*Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128 (N.D. Cal. 2010) .......... 12

*True v. Am. Honda Motor Co.*, 520 F Supp. 2d 1175 (C.D. Cal. 2007) .......... 6

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) .......... 3, 8, 9, 11

*Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134 (N.D. Cal. Oct. 24, 2013) .......... 5

*Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010) .......... 7

**STATUTES**

Cal. Bus. & Prof. Code § 17200 .......... 1, 8

Cal. Bus. & Prof. Code § 17500 .......... 1, 8

Cal. Bus. & Prof. Code § 17580 .......... 1

Cal. Bus. & Prof. Code § 17580.5(a) .......... 8

Cal. Civ. Code § 1750 .......... 1

Cal. Civ. Code § 1770 .......... 8

RCW § 19.86.010 .......... 1

## I. INTRODUCTION

Plaintiff Stephanie Mattero has alleged viable claims against Defendant Costco Wholesale Corporation for violations of California's Consumers Legal Remedies Act,[1] False Advertising Law,[2] Environmental Marketing Claims Act,[3] and Unfair Competition Law[4]; breach of express warranty; and violations of Washington's Consumer Protection Act.[5] Her Complaint is straightforward: Costco advertises and sells dish soap and laundry detergent with identical "green" labeling that features a prominent "environmentally responsible" representation on the front labels.

The Products' "environmentally responsible" statement is reinforced by multiple other environment-related, or "green," labeling statements: that the Products are "safer for the planet" and "recognized for safer chemistry," and made according to a "biodegradable formula" from "naturally derived ingredients." Costco further buttresses these express claims with identical "green" images on both Products' labeling, including a green-leaf recycling-type symbol, blue water droplets, and a green leaf floating in a pool of pristine blue water, all on a green-colored background and packaging.

Costco's labeling and packaging of the Products lead a reasonable consumer to only one conclusion: that the Products are safe for the environment by using non-toxic, naturally-derived, and biodegradable ingredients. However, the opposite is true; the Products contain many toxic, chemically-derived ingredients that are harmful to the environment.

To seek dismissal of Plaintiff's claims, Costco attempts several futile arguments. First, Costco argues that Plaintiff does not have standing to sue for the laundry detergent's labeling because she only purchased the dish soap. However, Plaintiff's allegations establish that the Products and their labeling are substantially similar such that she has standing to sue for both Products even if she only purchased one of them. Costco's argument that the "formulations" of the two Products differ is unavailing. The Products share at least one known offensive ingredient and bear the same offensive labeling, which is false for the same reasons with respect to both Products, and any purported dispute over product

---

[1] Cal. Civ. Code § 1750, *et seq.* ("CLRA").
[2] Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL").
[3] Cal. Bus. & Prof. Code § 17580, *et seq.* ("EMCA").
[4] Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").
[5] RCW § 19.86.010, *et seq.* ("WCPA").

"formulation" or specific ingredients' origin or effect is a factual inquiry not ripe for determination at this stage.

Costco also argues that Plaintiff has failed to satisfy the pleading requirements of Federal Rule of Civil Procedure ("Rule") 9(b) as to her allegations that Costco fraudulently violated the CLRA, FAL, EMCA, UCL, and WCPA. Yet as other consumer cases have established, Plaintiff's burden under Rule 9(b) is only to show Costco's misrepresentations were material. In any event, Plaintiff's Complaint satisfies the more stringent "who, what, when, where, and how" requirements Costco seeks to impose. However, Costco's misapplication of the "when" and "how" inquiries lacks merit and is contradicted by its own authority.

Costco then asserts that Plaintiff fails to state viable consumer protection law and warranty claims. But Plaintiff's claims under California and Washington consumer protection laws are sufficiently pleaded because they satisfy the "reasonable consumer" standard. Plaintiff plausibly alleges that she and other consumers were reasonably deceived by the Products' "environmentally responsible" labeling because the Products actually contain toxic ingredients that are harmful to the environment. Costco's misdirected focus on whether or not all of the Products' ingredients are "naturally derived" misses the mark and ignores Plaintiff's detailed allegations about the offensive ingredients' environmental toxicity throughout the Complaint.

Likewise, Plaintiff's breach of express warranty claim is properly pleaded. Costco expressly warranted that the Products were "environmentally responsible," a sufficiently specific and unequivocal promise. Plaintiff saw that express warranty on the Products' labeling prior to purchase, Plaintiff would not have purchased or paid as much for the Products had she known that warranty to be false, Costco breached its warranty because the Products are not "environmentally responsible" as warranted, and Plaintiff suffered economic damages entirely due to Costco's breach.

Finally, Costco throws in a last-ditch "alternative" argument that the case should be stayed under the first-to-file rule pending a decision on a motion to dismiss in *Gonzalez v. Costco*, No. 16-cv-2590-NGG-JO (E.D.N.Y.). However, the first-to-file rule does not apply, because *Gonzalez* and this case involve different parties and different legal issues. Even though the *Gonzalez* action involves the same Products' "environmentally responsible" labeling, Ms. Gonzalez is a New York plaintiff asserting

claims under New York law, while Ms. Mattero is a California plaintiff asserting claims under California and Washington law.

Costco actually highlighted these material differences by moving to dismiss another California plaintiff from the *Gonzalez* action for lack of personal jurisdiction, and its attempt to delay these proceedings is disingenuous in light of its inconsistent positions in the two cases. In addition, any stay awaiting a decision in the *Gonzalez* action would cause prejudice to Plaintiff here due to the considerably slower and indefinite timing in the Eastern District of New York, where Costco's motion to dismiss has been pending nearly nine months and still requires a report and recommendation from the magistrate judge before any district court decision. The Court should exercise its discretion to decline application of the first-to-file rule and permit Plaintiff's claims to proceed here, especially given the prejudice that such a stay would cause Plaintiff.

## II.    LEGAL STANDARDS

When a motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over a plaintiff's claims, the plaintiff must establish her Article III standing by showing that the injury alleged is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

In considering a motion to dismiss under Rule 12(b)(6), all allegations in a plaintiff's complaint must be "taken as true and construed in the light most favorable to" the plaintiff. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008). While a plaintiff must plead more than mere "labels and conclusions," her complaint must include "only enough facts to state a claim to relief that is plausible on its face." *BellAtlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely." *Id.* at 556. "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams*, 552 F.3d at 939.

"The most basic aspect of the first-to-file rule is that it is discretionary." *Alltrade, Inc. v. Uniweld Prods.*, 946 F.2d 622, 628 (9th Cir. 1991). "A district court has discretion to stay an action where 'a complaint involving the same parties and issues has already been filed in another district.'" *Le v. Pricewaterhousecoopers LLP*, No. 07-cv-5476-MMC, 2008 WL 618938, at *1 (N.D. Cal. Mar. 4, 2008).

"In deciding whether to apply the first-to-file rule, a court considers: 1) the chronology of the actions; 2) the similarity of the parties; and 3) the similarity of the issues at stake." *Schwartz v. Frito-Lay N. Am.*, No. 12-cv-2740-EDL, 2012 WL 8147135, at *2 (N.D. Cal. Sept. 12, 2012) (citing *Alltrade*, 946 F.2d at 625).

## III. ARGUMENT

### A. Plaintiff has standing to sue for both Products.

In determining whether a plaintiff has established Article III standing to sue for products she did not purchase, the "critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased." *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-cv-2910-EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012); *see also Lanovaz v. Twinings N. Am., Inc.*, No. 12-cv-2646-RMW, 2013 WL 2285221, at *2 (N.D. Cal. May 23, 2013) (finding the plaintiff had standing to sue for tea products she did not purchase because they were concretely based upon the same labeling describing the same antioxidant ingredient and particularized because she read and relied upon that same labeling in making her purchase decision).

In *Astiana*, the court found that the plaintiffs were challenging the same kind of food products (all ice cream products) and the same labeling for all of those products, concluding the plaintiffs "alleged sufficient similarity between the products they did purchase and those that they did not." 2012 WL 2990766, at *13. Similarly, in *Parker v. J.M. Smucker Co.*, No. 13-cv-690-SC, 2013 WL 4516156 (N.D. Cal. Aug. 23, 2013), the court found "sufficient similarity" between the vegetable oil products even though each was either derived or blended from different vegetables because their actionable labeling was identical. *Id.* at *2. The plaintiff had standing to sue for alleged mislabeling of all four oil products despite only purchasing one of them. *Id.* at *3.

Here, Costco's arguments fail to undermine the substantial similarity of the Products' identical representations. Plaintiff alleges that Costco's dish soap and laundry detergent Products both are labeled as "environmentally responsible," identically accompanied by claims that the Products are made from "naturally derived" ingredients, are "recognized for safer chemistry," are "safer for the planet," and made according to a "biodegradable formula," as well as highly suggestive "green" imagery of recycling symbols, leaves, and pristine water. (*See* Class Action Complaint, Dkt. 1 ("Complaint"), at ¶¶ 5-7.)

Plaintiff further alleges that, despite this "green" labeling on both Products, both contain various harmful and toxic chemical ingredients, such as sodium hydroxide, sodium lauryl sulfate, lauramine oxide, and methylisothiazolinone. (Complaint ¶ 10.)

Costco attempts to distinguish the two Products by arguing that they contain "different formulations" and only share one "harmful" ingredient (*see* Motion to Dismiss, Dkt. 19 ("Motion"), at 8:1-3), but this belies the fact that Plaintiff sufficiently alleges that they contain identical "green" labeling claims and both contain chemical ingredients that can harm the environment—a departure from consumers' expectations based on Costco's labeling claims. Additionally, Costco concedes that both Products share at least one ingredient Plaintiff alleges to be synthetic and highly toxic to the environment. (*See* Complaint ¶¶ 35, 62-73 (methylisothiazolinone).) Any disparity in the formulation or ingredient list of the Products is immaterial to the foundation of Plaintiff's claims, failing to detract from the substantial similarity of the Products' false and misleading statements.

Costco's cited authority actually supports the proposition that disputes about the "sufficient similarity" of products is not a standing inquiry appropriate for adjudication at the pleading stage, instead more appropriate for determination at the class certification stage. *See Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 571 (N.D. Cal. 2013). Costco inappropriately cherry-picks a standing proposition from the *Clancy* opinion that is not the court's holding, but rather one theory posited in a discussion of competing standing theories within this District. *See generally id.* at 569-70. Like *Clancy*, the *Astiana* court also held that "any concerns . . . about material differences are better addressed at the class certification stage rather than at the 12(b)(6) stage." 2012 WL 2990766, at *11.

Costco's reliance on *Rugg v. Johnson & Johnson*, No. 17-cv-5010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018) also is unconvincing. *Rugg* is factually distinguishable because those plaintiffs sought standing for 32 disparate beauty products but failed to allege which products contained which allegedly harmful ingredients. *Id.* at *6. Similarly, the plaintiffs' complaint in *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134 (N.D. Cal. Oct. 24, 2013) merely listed 85 other snack food products containing the same allegedly offensive labeling but failed to provide any other detail about the additional products. *Id.* at 1141. Here, there are only two Products at issue, both are household cleaning

products, Plaintiff has identified the offensive ingredients in each, and the Products share the same offensive labeling and at least one of the offensive ingredients. (Complaint ¶¶ 35, 49-73.)

Plaintiff has standing to sue for alleged false and misleading labeling of both Products, and any factual dispute about whether the "formulation" of the Products is substantially similar is unripe for adjudication at the motion to dismiss stage.

**B. Plaintiff's allegations satisfy Rule 9(b).**

To the extent Rule 9(b) applies to a plaintiff's consumer protection law claims, it does not apply in the same manner it might apply to a traditional fraud claim because "the elements of common law fraud are not essential to a claim under the California unfair competition law." *Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1217 (S.D. Cal. 2007) (denying motion to dismiss UCL claim under Rule 9(b)). To state a UCL claim, a plaintiff need only allege that the defendant's misrepresentations were "material" to her purchase decision. *See, e.g.*, *True v. Am. Honda Motor Co.*, 520 F Supp. 2d 1175, 1182 (C.D. Cal. 2007); *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1269 (C.D. Cal. 2007) ("The fraud prong of the UCL differs from common law fraud or deception. . . . To satisfy the fraud prong of the UCL, Plaintiffs need only to show that members of the public are 'likely to be deceived' by the conduct."); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076 (N.D Cal. 2011) ("[Defendant] further argues that plaintiffs do not plead reliance. [Defendant] is mistaken. Plaintiffs repeatedly allege that [defendant's] . . . statements were material to them and had they known that there would be no flexible unlimited data plan, they would not have purchased their iPad 3Gs. . . . In sum, plaintiffs' allegations meet the requirements of Rule 9(b)."). The same rule applies to a plaintiff's FAL and CLRA claims. *True*, 520 F. Supp. 2d at 1177, 1182. Here, Plaintiff's allegations establish the materiality of Costco's deceptive labeling of the Products. (Complaint ¶¶ 5-15, 19-20, 103, 124.)

Even if the "who, what, when, where, and how" identifications under the heightened Rule 9(b) pleading standard were required, Plaintiff's allegations meets that standard. Costco's analysis of the "when and how"[6] requirements of Rule 9(b) (Motion at 10:16-22) are red herrings. The pertinent "when"

[6] Costco does not argue that Plaintiff's Complaint fails to satisfy the "who," "what," and "where" heightened pleading requirements of Rule 9(b), conceding sufficiency by omission.

is when Plaintiff viewed Costco's allegedly deceptive labeling, which was prior to her purchase. Plaintiff adequately pleads her "when"[7] allegations. (Complaint ¶¶ 19-20, 103, 124.) The relevant "how" inquiry is how Costco's labeling was misleading to Plaintiff and other consumers and why it was false; Costco's labeling of the Products as "environmentally responsible," with other supporting "green" language and imagery, was false and misleading because the Products actually contain toxic ingredients that are harmful to the environment. Thus, Plaintiff meets this standard as well. (*E.g.*, Complaint ¶¶ 5-15.)

Costco's own authority actually follows this Rule 9(b) analysis, and does not support Costco's asserted inquiries regarding "when she came to believe" the Products' labeling was false or "when she came to learn" the Products contained the offensive ingredients (Motion at 10:17-19). *See In re NJOY, Inc. Consumer Class Action Litig.*, No. 14-cv-428-MMM-RZ, 2014 WL 12586074, at *10, 12 (C.D. Cal. Oct. 20, 2014) ("pleading the 'when' of the fraud requires that plaintiffs allege when they saw or heard the misleading statements"; finding the plaintiffs "adequately pled how the misrepresentations mislead and deceive reasonable consumers and why they are false and misleading"); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010) (the plaintiff "failed to allege when . . . she saw or heard the particular representations upon which her complaint is based"; with respect to "how," the plaintiff also did "not adequately identify the packaging that [she] saw and on which she relied").

Plaintiff is not required to set out "scientifically precise descriptions" of how the ingredients in the Products are not "environmentally responsible" as advertised; she need only describe their toxic and harmful effects on the environment, state that products with these chemicals contradict consumers' expectations of "environmentally responsible" or "safer for the planet" cleaning products, and conclude that Costco's labeling of the Products is false and misleading. *Parker*, 2013 WL 4516156, at *3 ("Plaintiff does not need to set out scientifically precise descriptions of how the Oils' chemical makeup changes. She only needs to describe the who, what, when, where, and how of the allegedly misleading conduct, which she has done: Plaintiff's FAC describes Defendant's chemical processing of the Oils,

---

[7] Contrary to Costco's misplaced assertions, Plaintiff does in fact allege that "[w]ithin a reasonable time after she knew or should have known of [Costco's misconduct], Plaintiff . . . placed Costco on notice thereof" by sending Costco a notice and demand letter of its breach of express warranty and violations of the CLRA. (Complaint ¶¶ 106, 138.)

states that this renders them non-natural, and concludes that if the Oils are non-natural then the "All Natural" tag is false or misleading.").

Plaintiff's allegations under California and Washington law satisfy Rule 9(b)'s requirements.

**C. Plaintiff's claims are sufficiently pleaded.**

**1. Plaintiff sufficiently pleads Costco's violations of the CLRA, FAL, EMCA, UCL, and WCPA.**

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "The false advertising law prohibits any unfair, deceptive, untrue, or misleading advertising." *Williams*, 552 F.3d at 938 (citing Cal. Bus. & Prof. Code § 17500) (internal quotation marks omitted). The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. The EMCA prohibits "any untruthful, deceptive, or misleading environmental marketing claim." Cal. Bus. & Prof. Code § 17580.5(a). The WCPA prohibits unfair or deceptive acts in the conduct of trade or commerce that impact the public interest. *Birkholm v. Wash. Mut. Bank, F.A.*, 447 F. Supp. 2d 1158, 1165 (W.D. Wash. 2006).

These consumer protection laws are governed by the "reasonable consumer" test. *Williams*, 552 F.3d at 938 (applying the reasonable consumer standard to UCL, CLRA, and FAL claims); *see also, e.g.*, *Jou v. Kimberly-Clark Corp.*, No. 13-cv-3075-JSC, 2013 WL 6491158, at *5 (N.D. Cal. Dec. 10, 2013) (same for EMCA claims); *Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1267 (W.D. Wash. 2011) (same for WCPA claims). "Under the reasonable consumer standard, [a plaintiff] must show that members of the public are likely to be deceived." *Williams*, 552 F.3d at 938. "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* (internal quotation marks omitted). In many cases, determining whether a business practice is deceptive involves questions of fact not appropriate for adjudication at the motion to dismiss stage. *Id.* at 938-39; *see also Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) ("whether a reasonable consumer would be deceived . . . [is] a question of fact not amenable to determination on a motion to dismiss."). Only in "rare situations" a court may determine that alleged violations of these statutes are "simply not plausible" as a matter of law. *Ham*,

70 F. Supp. 3d at 1193; *see also In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011) ("it is a 'rare situation' where granting a motion to dismiss claims under the UCL is appropriate") (quoting *Williams*, 552 F.3d at 939).

The instant case is not one of those "rare situations" of implausible allegations warranting dismissal, and Costco's rationalizations belie that finding. Initially, Costco argues that Plaintiff's allegations are implausible because Plaintiff "does not challenge any of the other specific representations on the Products' labels" other than the "environmentally responsible" labeling. (Motion at 12:2-3.) This is simply not true: Plaintiff's Complaint points to many other aspects of the Products' labeling that appear to bolster the "environmentally responsible" statement, including the "naturally derived ingredients," "recognized for safer chemistry," "safer for the planet," and "biodegradable formula" statements, as well as the Products' "green" imagery and packaging. (*E.g.*, Complaint ¶¶ 6-7.)

Costco then puts forth two convoluted arguments that strain credibility. First, Costco argues that the Products' labeling is truthful by ignoring the "environmentally responsible" representation and arguing the label and focusing only the representations that say the Products "include[] naturally derived cleaning ingredients" and purports to meet certain regulatory cleaning product designations. (*See* Motion at 12:1-8.) Second, Costco argues that a reasonable consumer should somehow understand that products prominently labeled as "environmentally responsible" may still contain toxic, synthetic ingredients if "*only some ingredients are 'naturally derived.'*" (*Id.* at 12:26-13:3 (emphasis in original).)

Costco's analysis is counterintuitive. Costco's arguments focus on Plaintiff's allegation that reasonable consumers expect cleaning products labeled "environmentally responsible" to contain "only non-toxic, natural substances." (Complaint ¶ 32.) Yet Costco only attacks the "natural" portion of Plaintiff's allegation based on the Products' "naturally derived" labeling, language which purportedly hedges against a holistic "natural" representation. Implicit in Costco's argument is a curious presumption that reasonable consumers would understand the presence of some non-natural, chemically-derived ingredients to mean that the Products still may be toxic to the environment, despite prominent claims of being "environmentally responsible," "safer for the planet," and "biodegradable."

A reasonable consumer reviewing the Products' labeling prior to purchase would not perceive a cleaning product touted as "environmentally responsible," "safer for the planet," and "biodegradable"

to contain toxic, synthetic ingredients that actually are not any more environmentally responsible, safer for the planet, or biodegradable than ingredients in cleaning products without those "green" representations. This is why Plaintiff alleges that she and the putative class "would not have purchased the Products or would not have paid as much for them" (Complaint ¶¶ 103, 124) had they known the truth: that the Products are not "environmentally responsible," or at least not any more "environmentally responsible" than other cleaning products containing the same toxic ingredients but not the same "green" labeling.

Costco does little to contest Plaintiff's allegations that four of the Products' ingredients are toxic and harmful to the environment, a direct contradiction of their labeling. (*See* Complaint ¶¶ 49-73 (sodium hydroxide, sodium lauryl sulfate ("SLS"), lauramine oxide, and methylisothiazolinone).) Costco appears to rest its argument on the fact that three of these four ingredients are not among the ingredients the Products' labeling identify as "naturally derived," then arguing that the fourth ingredient (SLS) is not falsely represented as "naturally derived," which consumers could only learn by looking for small symbols among the Products' ingredient lists. Yet Plaintiff's allegations concerning SLS, like those concerning the other three ingredients, satisfy the reasonable consumer standard: SLS is a highly toxic cleaning ingredient that "should be kept out of the environment" and a reasonable consumer would not expect a product labeled as "environmentally responsible" to contain SLS. (Complaint ¶¶ 56-57.)

In a recent analogous case involving Clorox's Green Works cleaning products, which Clorox advertised as "naturally derived," the court denied Clorox's motion to dismiss the plaintiffs' UCL, FAL, and CLRA claims because "the complaint alleges facts that, if true, establish that the 'naturally derived' representations misled the named plaintiffs, caused the named plaintiffs harm, and did the same to putative class members" and that the plaintiffs "understood that representation to mean the green works products were 'natural product[s] that did not contain any synthetic or non-natural ingredients,' . . . when in fact the product contained synthetic ingredients." *Gregorio v. The Clorox Company*, No. 17-cv-3824-PJH, 2018 WL 732673, at *4 (N.D. Cal. Feb. 6, 2018). The *Gregorio* court held that such a consumer expectation was not unreasonable as a matter of law. *Id.* The same holds true here, as Plaintiff and the putative class reasonably expected that Products labeled as "environmentally responsible" would not contain toxic ingredients that are harmful to the environment. It does not matter whether all of the instant

Products' ingredients are "naturally derived" if they nonetheless are toxic to the environment, because that toxicity directly contradicts what consumers reasonably expect from a so-called "environmentally responsible" cleaning product.

The *Gregorio* court also refutes another argument by Costco: that the Court should consider the "context with the other, specific representations on the Products' labels" (Motion at 11:10-11) to find the labels not deceptive. In *Gregorio*, "[t]he plausibly deceptive nature of the 'naturally derived' labeling remains despite, as defendant argues, the ingredient lists on the back of the label and, more dubiously in the court's opinion, Clorox's website disclosures." *Id.* at *5 ("[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . . [Ingredient lists do not exist] so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.") (citing *Williams*, 552 F.3d at 939)). A reasonable consumer expects "'that the ingredient list contains more detailed information about the product that confirms other representations on the packaging,' not, as is the case here, contradict the packaging's other representations." *Id.* (quoting *Williams*, 552 F.3d at 939). The *Gregorio* court held that the plaintiffs' allegations were plausible, and the parties' dispute as to whether a reasonable consumer would be deceived by the product labeling is a determination for the jury, not at the motion to dismiss stage. *Id.*; *see also Williams*, 552 F.3d at 938-39 (same); *Ham*, 70 F. Supp. 3d at 1193 (same). The same is apparent here.

Costco's cited authority for its arguments is unhelpful. In *Chuang v. Dr. Pepper Snapple Group, Inc.*, No. 17-cv-1875-MWF-MRW, 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017), Snapple's representations were truthful because the beverages in question did in fact contain the fruits and vegetables depicted and the amount of Vitamin C advertised. *Id.* at *4. In *Kane v. Chobani, Inc.*, No. 12-cv-2425-LHK, 2013 WL 5389253 (N.D. Cal. Sept. 19, 2013), the plaintiffs implausibly alleged that fruit and vegetable juice were non-natural ingredients falsifying a yogurt's "all natural" labeling and failed to articulate allegations regarding their reliance on "evaporated cane juice" and "no sugar added" advertisements. *Id.* at *7-10. In *Red v. Kraft Foods, Inc.*, No. 10-1028-GW (AGRx), 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012), the plaintiffs conceded that the contested labeling, "made with real

vegetables," was a true representation. *Id.* at *2. In *Maple v. Costco Wholesale Corp.*, 649 F. App'x 570 (9th Cir. 2016), the decision to dismiss the plaintiff's claims rested on the finding that the plaintiff failed to allege he read the contested labeling. *Id.* at 572. In *Rooney v. Cumberland Packing Corp.*, No. 12-cv-33-H-DHB, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012), the plaintiff's inference that "raw sugar" meant "unprocessed and unrefined" did not comport with the product's other labeling statements or the sugar industry's standards for the term "raw." *Id.* at *4. Unlike the above cases, Plaintiff has plausibly alleged that she and other consumers were objectively deceived by the Products' "environmentally responsible" labeling because the Products actually contain toxic ingredients that are harmful to the environment.

In *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666 (E.D.N.Y. 2017), the beer labeling at issue explicitly disclaimed any inference that the beer originated in Australia. *Id.* at 675. In *Hairston v. S. Beach Beverage Co., Inc.*, No. 12-cv-1429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012), most of the plaintiff's claims were preempted by FDA regulations, and the remaining claim that the flavored water's "all natural" label was deceptive failed because the "all natural" statement was accompanied by "with vitamins" language. *Id.* at *4-5. Here, no other language on the Products' labeling sufficiently qualifies or disclaims the "environmentally responsible" statement to eliminate the deception inherent in the presence of toxic, environmentally-harmful ingredients.

**2. Plaintiff sufficiently pleads Costco's breach of express warranty.**

To allege a breach of express warranty claim under California law, the buyer must allege that the seller: "(1) made an affirmation of fact or a promise, or otherwise described the goods; (2) the statement formed part of the basis of the bargain; (3) the express warranty was breached; (4) the plaintiff was harmed; and (5) the breach of warranty was a substantial factor causing the plaintiff's harm." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010).

Plaintiff's Complaint satisfies the above elements to sufficiently plead Costco's breach of express warranty: (1) Costco made an affirmation of fact that the Products were "environmentally responsible" (among other "green" promises, such as being "safer for the planet" and "biodegradable") (Complaint ¶¶ 5, 132); (2) Costco's affirmation formed part of the basis of the bargain for Plaintiff and other consumers purchasing the Products (*id.* ¶¶ 19-20, 133); (3) Costco breached its warranty because

its affirmation was false (*id.* ¶¶ 9-10, 136); (4) Plaintiff and other purchasers were damaged by purchasing Products they would not have purchased or would not have paid as the price they paid (*id.* ¶¶ 15, 19-20, 103, 124, 137); and (5) Costco's breach of warranty was the substantial cause of Plaintiff's damages (*id.* ¶¶ 8, 11, 15, 19-20).

Costco's primary argument is that "environmentally responsible" is not a "specific and unequivocal" affirmation of fact sufficient to establish an express warranty. Tellingly, Costco presents no authority where environmental or "green" labeling was held to be too equivocal or nonspecific to form a warranty. Instead, Costco relies on cases dealing with vague "safety" and "reliability" statements, distinguishable on the facts here. Whether the Products are "environmentally responsible" is measurable and unequivocal because the ingredients the Products contain are either harmful to the environment, or they are not. In an analogous case, *Kellman v. Whole Foods Market, Inc.*, No. 17-cv-6584-LB, 2018 WL 2938612 (N.D. Cal. June 12, 2018), the plaintiffs alleged that the defendant breached an express warranty by labeling certain household products as "hypoallergenic" when the products actually contained known allergens. *Id.* at *1. The *Kellman* court agreed, denying the defendant's motion to dismiss the plaintiffs' breach of express warranty claims. *Id.* at *6.

Here, Plaintiff alleges the Products contain at least four ingredients that are highly toxic and extremely harmful to the environment, unequivocally demonstrating that not only is Costco's "environmentally responsible" statement specific and measurable, but that it is false and misleading. Costco's reliance on *Frenzel v. AliphCom*, 76 F. Supp. 3d 999 (N.D. Cal. 2014) is misplaced. The *Frenzel* court did not address the issue of whether the alleged warranty statements were unequivocal; that plaintiff's claims failed because his fitness-tracker wristband was outside the terms of the express warranty, as it was first replaced during the one-year warranty period and then broke again after the warranty period had expired. *Id.* at 1019.

Costco's secondary argument is that one of Plaintiff's allegations (Complaint at ¶ 32 (that the Products "contain only non-toxic, natural substances")) is somehow the express warranty she is asserting, even though no such representation appears on the Products' labeling. (*See* Motion at 9:4-19.) This nonsensical argument appears to be a misreading of Plaintiff's claims and bears no relation to

Plaintiff's breach of express warranty claims, which relate to Costco's specific, unequivocal statement that the Products are "environmentally responsible." Costco's argument on this point is a non sequitur.

Costco's final argument against its breach of express warranty is that somehow "Plaintiff has failed to allege facts sufficient to show how that warranty has been breached." (Motion at 9:20-21.) Plaintiff has done just that by alleging that the Products are not "environmentally responsible" as warranted because they contain several toxic ingredients that are harmful to the environment. (Complaint ¶¶ 9-10, 49-73.) Ignoring these allegations, Costco instead points to regulatory "designations" on the Products' labeling to argue the Products are in fact more "environmentally responsible" than other cleaning products. (Motion at 9:21-26.) The Products may have certain regulatory designations, but Costco nonetheless has breached its warranty to consumers because those designations do not magically wipe the Products clean of their toxic ingredients and render them "environmentally responsible" as warranted. Costco's reliance on *Smith v. LG Elecs. U.S.A., Inc.*, No. 13-cv-4361-PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) is again misplaced because those alleged express warranties were vague statements regarding washing machines' "reliability, dependability, and safety" such as "High Efficiency" and "fit for everyday laundering needs." *Id.* at *4-5. Here, the affirmation "environmentally responsible" is specific and measurable, such that the Products' ingredients demonstrate its falsity.

Plaintiff sufficiently alleges that Costco breached an express warranty that the Products are "environmentally responsible."

**D. <u>Costco's alternative motion for stay should be denied</u>.**

Because this case and *Gonzalez* do not involve "the same parties and issues," the first-to-file rule does not apply. *Alltrade*, 946 F.2d at 625. Costco's arguments for stay in the alternative to its motion to dismiss are both disingenuous and faulty.

Throughout its argument for stay, Costco incessantly characterizes *Gonzalez* and this action as "identical" (Motion at 14:5, 14:25, 15:8, 15:21, 15:26), but the two actions involve different parties and questions of law. Plaintiff does not dispute that *Gonzalez* was filed first and also involves allegations that the Products' "environmentally responsible" labeling is false and misleading. However, the plaintiff in *Gonzalez* is a New York resident asserting claims under New York statutory and common law. *See*

*Gonzalez*, Dkts. 24, 40. Ms. Gonzalez seeks to represent a nationwide class only as to her common law claims, unjust enrichment and breach of express warranty, while she seeks to represent a New York subclass for her claims under N.Y. Gen. Bus. Law §§ 349 (deceptive acts and practices) and 350 (false advertising). *Id.*

In the instant action, Plaintiff is a California resident asserting claims under California and Washington statutory law and California common law. (Complaint ¶¶ 92-149.) Plaintiff seeks to represent a nationwide class for her California common law breach of express warranty claim and her WCPA claim, while she seeks to represent a California subclass for her CLRA, FAL, EMCA, and UCL claims. (*Id.*) In *Le v. Pricewaterhousecoopers LLP*, the court denied a motion to stay under the first-to-file rule, even though the two cases presented "the same underlying issue" and the first-filed case already had a motion to certify a class under submission. 2008 WL 618938, at *1-2.

Tellingly, Costco omits any reference to its previous motion to dismiss arguments in the *Gonzalez* action pertaining to former plaintiff Annallee Dodd, a California resident also alleging CLRA, FAL, EMCA, and UCL claims against Costco. *See Gonzalez*, Dkt. 28. There, Costco argued that the Eastern District of New York lacked personal jurisdiction over Ms. Dodd's claims because they did not arise out of or relate to Costco's contacts with that forum. *Id.* at 14. Ultimately, Ms. Dodd conceded that her California subclass claims were more properly brought in California and voluntarily dismissed her claims without prejudice. *Id.*, Dkt. 29 at 8; Dkt. 40.

Now, Costco disingenuously argues that the instant Plaintiff's claims, which mirror Ms. Dodd's, should be stayed to await a motion to dismiss that no longer involves claims under California or Washington law. Costco's assertion that a decision on the *Gonzalez* motion "would be persuasive authority" (Motion at 15:20) sidesteps the materially different legal claims to be adjudicated.

Even if the Court were to find that the first-to-file rule applied, the Court in its discretion should decline to exercise the rule because, contrary to Costco's assertions (Motion at 15:4-6), a stay of this action would prejudice Plaintiff. Costco argues that Plaintiff "would be able to pursue her claims" in the event a nationwide class is certified in *Gonzalez*. (*Id.*) But any such certification would be under a different state's law, and that is only one highly speculative possible outcome of the indefinite stay Costco contemplates. Even if the breach of express warranty claims in *Gonzalez* were to be certified

under a nationwide class, this Plaintiff's claims under the CLRA, FAL, EMCA, UCL, and WCPA would remain in limbo.

Furthermore, the proceedings in the Eastern District of New York have and are likely to continue to proceed at a much slower pace. Costco's motion to dismiss plaintiff Gonzalez's second amended complaint was fully briefed and filed almost nine months ago, on November 20, 2017. *Gonzalez*, Dkts. 27-30. Motions to dismiss in the Eastern District of New York typically are decided without hearing and many months may elapse before a decision is entered. Additionally, the parties' motion to dismiss briefing was referred by the district judge to the magistrate judge for report and recommendation back on February 22, 2017 (*id.*, no docket entry), so there will be another layer of delay from when the magistrate judge issues his recommendation to when the district court ultimately renders its decision after considering the recommendation.

A more practical—and less prejudicial—exercise of discretion would be to permit the pleadings in both cases to be adjudicated to determine which claims under which states' laws will proceed.

## IV. CONCLUSION

The Court should deny Costco's motion to dismiss or stay in its entirety. Should the Court be inclined to grant any portion of Costco's motion, Plaintiff respectfully requests leave to amend her complaint.

Respectfully submitted,

Dated: August 17, 2018

*<u>/s/ Tina Wolfson</u>*
Tina Wolfson, SBN 174806
*twolfson@ahdootwolfson.com*
Bradley K. King, SBN 274399
*bking@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111; Fax: (310) 474-8585

Michael Mietlicki*
*mmietlicki@richmanlawgroup.com*
RICHMAN LAW GROUP
81 Prospect Street
Brooklyn, New York 11201
Tel: (718) 705-4579; Fax: (212) 687-8292
* *pro hac vice* application forthcoming

*Counsel for Plaintiff Stephanie Mattero*