UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE MATTERO,<br><br>    Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>    Defendant. | Case No. 18-cv-02871-WHO<br><br>**ORDER DENYING MOTION TO DISMISS OR STAY**<br><br>Re: Dkt. No. 19 |

    Plaintiff, on behalf of herself and a proposed class of nationwide consumers and a subclass of California consumers, challenges defendant Costco Wholesale Corporation's (Costco) advertising and marketing on its Kirkland Signature Premium Liquid Dish Soap (Dish Soap) and Kirkland Signature Premium Laundry Detergent (Laundry Detergent, collectively Products) as "environmentally responsible." Plaintiff alleges that Costco's use of various "environmentally friendly" phrases and images on its labeling and marketing for the Products is false, misleading, and in violation of state and federal laws because the Products contain "unnatural, harmful, and toxic chemical ingredients" and that reasonable consumers do not expect such ingredients to be in products labeled "environmentally responsible."

    Costco moves to dismiss. I am denying that motion because plaintiff has adequately alleged her deceptive and fraud-based claims and Costco's challenges to the same cannot be resolved on a motion to dismiss. Costco also moves to stay this case until a pending motion to dismiss is resolved by the Eastern District of New York in a case based on similar misrepresentations. I deny that motion as well because the claims here are largely based on California law (and to a lesser extent Washington law) while the claims in the other case are based largely on New York law. Moreover, staying this case is not equitable because in the Eastern District of New York Costco sought, and the plaintiffs eventually agreed, to dismiss California

law claims from that litigation. Those claims should proceed here.

**BACKGROUND**

Plaintiff challenges Costco's advertising and marketing its Kirkland Signature Premium Dish Soap and Laundry Detergent as "environmentally responsible," along with specific representations that the Products are made from "naturally derived ingredients," are "recognized for safer chemistry," are "safer for the planet," and are made with a "biodegradable formula." Compl. ¶¶ 4-6 (Statements). The Products' labels are also filled with imagery – icons resembling recycling symbols, water drops, leaves, and a central image of a leaf floating in pristine water— that are according to plaintiff "highly suggestive of [a] 'green,' environmentally responsible product." *Id*. ¶¶ 7, 35-42. These Statements, plus the imagery, create "an impression that the Products are natural, safer, and environmentally sound alternatives to traditional dish soaps and detergents." *Id*. ¶¶ 8, 32-33.

Plaintiff contends that representation or impression is false because the Products "contain unnatural, harmful, and toxic chemical ingredients, including sodium hydroxide, sodium lauryl sulfate ('SLS'), lauramine oxide, and methylisothiazolinone ('MI')" as well as methylchloroisothiazolinone ("MCI") and benzisothiazolinone ("BIT"). *Id*. ¶ 10 & n.2; *see also id*. ¶¶ 44-73.[1] According to plaintiff, "[r]easonable consumers do not expect such ingredients to be in products labeled 'environmentally responsible.'" *Id*. ¶¶ 10, 68-73.

Plaintiff alleges that because of its deceptive conduct, Costco is able to sell more or charge more for the Products than it would if the Products were accurately labeled. *Id*. ¶¶ 15, 83. Plaintiff purchased the Dish Soap in December 2015, and she reviewed and relied on the "environmentally responsible" labelling and images. *Id*. ¶¶ 18-19. If defendant remedied its misleading conduct, plaintiff avers that she would consider buying the Products again. *Id*. ¶ 21.

Plaintiff brings this case on behalf, first, of a nationwide class (Class), and separately, on behalf of a California sub-class (Sub-Class). *Id*. ¶ 85. She alleges that defendant's misrepresentations and false advertising violate the Federal Trade Commission's (FTC) "Green

---

[1] In her Complaint, plaintiff includes specific allegations regarding Sodium Hydroxide, Sodium Lauryl Sulfate, Lauramine Oxide, and Methylisothiazolinone. *Id*. ¶¶ 50-67.

1  Guides," and as such are *per se* unlawful under California's Environmental Marketing Claims Act
2  (EMCA). *Id*. ¶¶ 75-82. She assets causes of action for: (i) violation of the California Consumer
3  Legal Remedies Act, Cal. Civ. Code § 1750, on behalf of the Sub-Class; (ii) violation of
4  California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, on behalf of the Sub-Class;
5  (iii) violation of the California EMCA, Cal. Bus. & Prof. Code §§ 17580-17581, on behalf of the
6  Sub-Class; (iv) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §
7  17200, on behalf of the Sub-Class; (v) breach of express warranty, on behalf of the Class; and (vi)
8  violation of the Washington Consumer Protections Act, RCW § 19.86.010, on behalf of the Class.

9  Costco moves to dismiss, arguing that plaintiff does not have standing to pursue claims
10 against the Laundry Detergent because she did not buy it, fails to identify an actionable
11 misrepresentation to support her breach of express warranty claim, fails to plead her fraud-based
12 claims with particularity, and fails to allege that "environmentally responsible" is deceptive under
13 California or Washington law.

14 In the alternative, Costco moves to stay this case pending the determination of a pending
15 motion to dismiss in a "first-filed" case, *Gonzalez v. Costco Wholesale Corp.*, No. 16-cv-2590
16 (NG) (E.D.N.Y.), which is based on the same misrepresentations.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." Id. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

**I.    MOTION TO DISMISS**

**A.    Standing**

As an initial matter, Costco argues that plaintiff cannot sue for claims based on the Laundry Detergent because she does not allege she bought it, the Laundry Detergent has an "entirely different" formula from the Dish Soap she purchased, and the Laundry Detergent has an entirely different use than the Dish Soap.

As my prior opinions in food labeling context have explained, plaintiffs have standing to sue over "unpurchased products" when the label statements challenged are very similar to the statements on the labels of the unpurchased products and there are no material differences between the products that would significantly alter the reasonable consumer analysis. *See, e.g., Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014) ("the best approach is one which focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products. That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products.").

Facts that plaintiff did not purchase the Laundry Detergent and the Laundry Detergent has different ingredients and that the Laundry Detergent only shares one harmful ingredient with the Dish Soap are not in and of themselves hurdles to plaintiff's standing. *See, e.g., Gallagher v. Bayer AG*, No. 14-CV-04601-WHO, 2015 WL 1056480, at *10 (N.D. Cal. Mar. 10, 2015) ("Defendants have not shown that because some of the Supplements have additional vitamins/minerals or have different amounts of vitamins/minerals, the consumers' claims are different or that consumers will suffer different injuries as a result of the materially identical Statements."); *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 969 (N.D. Cal. 2017)

1  (non-legally-significant differences in product ingredients does not defeat standing to sue for
2  unpurchased products). Here, Costco has not alleged, much less shown, that the Statements and
3  imagery that plaintiff complains of differ in a legally significantly way between the purchased-
4  Dish Soap and the unpurchased Laundry Detergent. Nor has Costco explained how the facts that
5  the Laundry Detergent and Dish Soap have different ingredients, different uses, and share only one
6  of the "toxic" ingredients plaintiff complains of are legally significant to whether reasonable
7  consumers will be misled or what reasonable consumers expect from those Products given the
8  Products' labeling and imagery.

Arguments about the differences between the Products, including their uses and their ingredients, may be significant on class certification or summary judgment. But Costco's bare assertion that there are differences is not enough to show a lack of standing. Costco's motion is DENIED on this ground.

### B. Actionable Misrepresentations for Breach

Costco argues that plaintiff has not stated and cannot state a breach of warranty claim because: (i) "environmentally responsible" is too vague a representation to be an express warranty; (ii) the warranty that plaintiff is actually trying to enforce is that the Products would contain only "non-toxic, natural substances" but that claim appears nowhere on the Products; and (iii) plaintiff has pleaded no facts supporting breach because she ignores label statements that adequately "substantiate" the "environmentally responsible" representation.

In general, a plaintiff asserting a breach of warranty claim must allege facts sufficient to show that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached. *See Weinstad v. Dentsply Int'l, Inc.*, 180 Cal.App. 4th 1213, 1227 (2010). Statements on a food label can create an express warranty. *See, e.g., Brown v. Hain Celestial Grp., Inc.*, 11-cv-03082–LB, 2012 WL 6697670, at *16 (N.D. Cal. Dec. 22, 2012) ("All Natural & Organic" cosmetic products); *Vicuna v. Alexia Foods, Inc.*, 11-cv-6119–PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) ("All Natural" label on potatoes was an express warranty that they did not have artificial ingredients); *see also Jones v. Nutiva, Inc.*, 16-CV-00711-HSG, 2016 WL

5

5210935, at *9 (N.D. Cal. Sept. 22, 2016) (denying motion to dismiss breach of warranty claim as to statements including "Superfood," "Coconut is one of the world's most nourishing foods," "is 'better than butter,'" and "A nutritious substitute in baking" because, taking inferences in the light most favorable to plaintiff, "the challenged statements constitute an affirmative fact or promise").

When determining whether an express warranty has been made, courts look to the context of the statement, including other content on the label. *See, e.g., Jones v. Nutiva, Inc.*, 2016 WL 5210935 at *7 ("considered in the context of Defendant's entire Virgin Coconut Oil label, this statement could 'certainly contribute [ ] ... to the deceptive context of the package as a whole.'"). At this juncture, as with the "all natural" cases, the "environmentally responsible" claim can, taking all reasonable inferences in the plaintiff's favor, constitute an affirmative fact or promise sufficient to create a warranty.

Costco's argument that the warranty plaintiff wants to assert (that the Products only contain non-toxic, natural substances) but cannot because that representation is not made on its labelling, fares no better. Plaintiff contends that the promise that the Products are "environmentally responsible" is false because the products contain chemicals that have been identified by authorities as hazardous, toxic, or bad for the environment. Costco cannot attempt to shift plaintiff's theory in order to dismiss it. Costco's argument that plaintiff has failed to allege sufficient facts to show how the warranty is breached also fails. Plaintiff's Complaint is very specific regarding why Costco's has breached the warranty of "environmentally responsible," namely by including in the product toxic and hazardous ingredients.

Finally, Costco's position that plaintiff's warranty claims fail because other, unrelied on statements on the back of the Products' labels are true and show that the products are (in some ways) "environmentally responsible" may provide a good defense at summary judgment, but cannot be used to win on a motion to dismiss. Those unchallenged statements are "Designed for the Environment U.S. EPA Recognized for Safer Chemistry", "Biodegradable formula per OECD [standards]", and "USDA Certified Biobased Product" representations. Mot. at 9. Even if I could rely on these unchallenged statements to evaluate the merits of plaintiff's breach claim, the *import* of those statements with respect to the Statements plaintiff does rely on is not obvious at this

juncture. For example, simply because a product has a "biodegradable formula" per for OECD, does that mean as a matter of law that a reasonable consumer would find the product environmentally responsible notwithstanding the presence of an (allegedly) highly toxic ingredient? These sorts of determinations must be made with an evidentiary record later in the case.

Costco's motion is DENIED on this ground.

### C. Specificity of Fraud-Based Claims

Costco contends that each of plaintiff's consumer-protection claims are fraud-based and, therefore, she must plead her claims with specificity in accordance with Rule 9(b). I agree that Rule 9(b) applies to plaintiff's California consumer misrepresentation claims as well as the claim arising under Washington law. However, Rule 9(b) only requires plaintiff to identify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false. *See Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks and citations omitted).

Costco argues that plaintiff has failed to meet the 9(b) standard because she does not allege facts showing how she became aware that the Statements on the Products were false, when and how she learned the Products contained the hazardous and toxic chemicals, and when or how she came to the belief that the presence of those ingredients in the Products contradicted the Statements. Mot. at 10. What Costco seeks, however, is information that it may uncover during discovery. All that is required, even under Rule 9(b), is for plaintiff to "set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The allegations of fraud "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). The detailed allegations in plaintiff's Complaint do just that. Costco is entitled to no more at the juncture.

### D. Deception under State Consumer Protection Statutes

Finally, Costco argues that the term "environmentally responsible" is not deceptive under

7

the CLRA, UCL, and Washington consumer protection statutes *when* that statement is considered in connection with other, unchallenged statements on the labels. Generally, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer" under California law. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). That is particularly true when defendants claim that alleged misrepresentations made on packaging might be dispelled when viewing other, less prominent representations. *See, e.g., id.* at 939 (rejecting argument "that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

Costco's challenge here depends, as above, on the meaning to a reasonable consumer of the additional, unchallenged statements on its Products that the Products were: "Designed for the Environment U.S. EPA Recognized for Safer Chemistry," "Biodegradable formula per OECD [standards]," and "USDA Certified Biobased Product." Costco argues that the challenged representations are, at most, a promise that Costco complies with the additional unchallenged statements. In other words, that the Products were designed in accordance with "safer chemistry" guided by the EPA, in conformance with the OECD biodegradable standards and in accordance with the USDA "biobased" standards. However, the relationship between these unchallenged statements (and what they convey to consumers) and whether those statements as understood by reasonable consumers undermine plaintiff's claims based her assertion that consumers do not expect "environmentally responsible" products to contains the identified toxic and hazardous ingredients are not appropriately resolved on a motion to dismiss.

This is not a case where plaintiff's challenge to a statement on a label is easily dispelled because of other, similarly prominent or proximate statements. *See,e.g., Kane v. Chobani, Inc.*, 12-CV-02425-LHK, 2013 WL 5289253, at *10 (N.D. Cal. Sept. 19, 2013) ("it is not plausible that Plaintiffs believed, based on Defendant's '[o]nly natural ingredients' or 'all natural' representations, that the Yogurts did not contain added fruit juice."); *see also Jonathan Chuang v. Dr. Pepper Snapple Group, Inc.*, CV1701875MWFMRWX, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017) ("Plaintiff does not adequately allege how the images and statements are false, in

8

1  particular because an independent review of the product labels reveals that the statements are not
2  false, as the products do contain the fruits and vegetables depicted, are made with fruit and
3  vegetable juice, and contain 100% of the daily value of Vitamin C."). Here, the meaning of the
4  challenged and unchallenged statements by a reasonable consumer in light of the allegedly toxic
5  and hazardous ingredients in the Products is not easily determined (or easily dispelled) and cannot
6  be resolved on this motion.

Defendant's motion to dismiss is DENIED.

## II. MOTION TO STAY

In the alternative, Costco argues that this case should be stayed until the pending motion to dismiss the Second Amended Complaint is resolved in the *Gonzalez* matter, which is being litigated in the Eastern District of New York by the same plaintiff's counsel as in this case. Costco contends the cases are materially similar, except that the sub-class in *Gonzalez* is New York consumers and tied to New York consumer protection statutes. Costco's motion to dismiss the Second Amended Complaint in *Gonzalez* has been pending since November 2017. Costco notes that in *Gonzalez*, there was a California plaintiff asserting the same California consumer protection claims asserted here, but that plaintiff voluntarily dismissed her claims in *Gonzalez* one month after this case was filed. Mot. at 14. Plaintiff, here, responds that the California claims were voluntarily dismissed in the *Gonzalez* case in the face of Costco's motion to dismiss for lack of personal jurisdiction over the California claims. Oppo. at 15.

Generally, "when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). The parties and issues do not need to be identical, but only "substantially similar." *See Kohn Law Grp. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015) ("a district court [may] stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court."); *see also Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 986 (N.D. Cal. 2011) ("When two actions involving nearly identical parties and closely related [ ] questions are filed in separate districts . . . the general rule is that the case first

filed takes priority, and the subsequently filed suit should be dismissed or transferred or stayed.").

The first-to-file rule is intended promote judicial efficiency and when "applying the first-to-file rule, courts should be driven to maximize 'economy, consistency, and comity.'" *Kohn*, 787 F.3d at 1239–40 (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir.1999)). "Thus, a court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn*, 787 F.3d at 1240. However, "[t]he most basic aspect of the first-to-file rule is that it is discretionary . . . ." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). It "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Sys.*, 678 F.2d at 95.

The *Gonzalez* case was filed two years before this case. However, there are significant distinctions between the cases. The plaintiff in *Gonzalez* seeks to represent a nationwide class for her common law unjust enrichment and breach of express warranty claims, and she also seeks to represent a New York sub-class under New York's consumer protection laws. Plaintiff's nationwide Class claims here are not just for breach of warranty, there is a claim arising under the Washington Consumer Protection statute, and Sub-Class claims based on California's consumer protection statutes. Plaintiff argues that in these circumstances there is not enough similarity and this case should not be stayed. See, e.g., *Lac Anh Le v. Pricewaterhousecoopers LLP*, C-07-5476 MMC, 2008 WL 618938, at *1 (N.D. Cal. Mar. 4, 2008) (denying stay where the case differed from first-filed state-law wage and hour case because plaintiff included a FLSA claim and plaintiff sought to represent a large, more expansive class).

There is some similarity in the parties given Costco is the defendant in both. However, now that the California-based plaintiff's claims have been dismissed in *Gonzalez*, with prodding from Costco, the differences between the cases in terms of what laws are in play with respect to the nationwide class and state law sub-classes are not that similar, although the underlying questions (*e.g.*, what is deceptive and as such illegal) may be. In addition, that Costco moved to dismiss the California law claims in *Gonzalez* and was successful in convincing plaintiff to drop them in that case is significant. Concerns of equity and comity likewise counsel against a stay on

these facts.

Costco's motion to stay is DENIED.

## CONCLUSION

For the reasons discussed above, Costco's motion to dismiss or in the alternative to stay is DENIED.

**IT IS SO ORDERED.**

Dated: September 17, 2018

William H. Orrick
United States District Judge